# In the United States Court of Federal Claims

Nos. 16-1423C, 18-853C
(Filed: July 20, 2022)
**FOR PUBLICATION**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| PATRICIA HADDOCK, *et al.*, | \* |
| | \* |
| Plaintiffs, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| DORIS DAVIS, *et al.*, | \* |
| | \* |
| Plaintiffs, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Howard Stanislawski*, Sidley Austin LLP, Washington, D.C., for Plaintiffs. With him on briefs were *Sean Commons*, *Logan P. Brown*, and *J. Ryan Stasell*, Sidley Austin LLP, Los Angeles, CA, as well as *Barton F. Stichman* and *Alessandra Venuti*, National Veteran's Legal Services Program, Washington, D.C., and *Howard Rubinroit*, Howard Rubinroit, Los Angeles, CA.

*Douglas G. Edelschick*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant, United States. With him on briefs were *Brian M. Boynton*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C, as well as *Benjamin B. Hamlow*, Assistant Deputy General Counsel, *Juliana B. Pierce*, Assistant Deputy General Counsel,

*William J. Hess, III*, Senior Assistant Counsel, Office of General Counsel, Defense Finance & Accounting Service, Indianapolis, IN.

## OPINION AND ORDER

Plaintiffs — surviving relatives of deceased Vietnam War veterans — seek compensation for injuries caused by exposure to Agent Orange. The government's motion to dismiss under RCFC 12(b)(1) and 12(b)(6) is ripe for disposition.[1]

No one questions the United States' legal obligation to provide compensation to Vietnam veterans and their beneficiaries. Other courts have commented that compensation has sometimes been slow to come. *See Nehmer v. United States Dep't of Veterans Affairs*, 494 F.3d 846, 849, 864–65 (9th Cir. 2007). But over the course of *this* case, the individuals who followed the administrative process for obtaining compensation have all been paid. Any claims belonging to people who have *not* participated in the process are unripe and otherwise unfit for court. Claims that have been paid are moot. And although I acknowledge the conclusions of other judges at earlier stages of this case who found jurisdiction despite those facts, I cannot perpetuate their well-intentioned errors. The motion to dismiss is therefore **GRANTED**.

## BACKGROUND

This case is part of an extensive history of litigation, legislation, and rulemaking related to Vietnam War veterans who were exposed to Agent Orange, a substance used "to defoliate large areas of forest so that Viet Cong and North Vietnamese troops could not hide beneath the foliage from view of aircraft." *Hercules Inc. v. United States*, 24 F.3d 188, 191 (Fed. Cir. 1994), *aff'd*, 516 U.S. 417 (1996). An explanation of the history and the legal framework for Agent Orange claims will aid the reader in understanding the issues presented here.

## I.   Factual and Legal Background

The Department of Defense ("DoD") and Department of Veterans Affairs ("VA") provide various benefits to retired service members who are disabled by medical conditions related to their service. After the Vietnam War ended, veterans and their families claimed that Agent Orange caused a variety of harmful health effects for exposed service members. Congress eventually promised compensation under the Agent Orange Act of 1991, Pub. L. No. 102-4, 105 Stat. 11 (codified in relevant part at 38 U.S.C. § 1116).

---

[1] Fourth Am. Compl. (ECF 96) ("Compl."); Def.'s Mot. to Dismiss (ECF 98) ("Def.'s Mot."); Pls.' Opp. to Def.'s Mot. to Dismiss (ECF 101) ("Pls.' Opp."); Def.'s Reply in Supp. of Mot. to Dismiss (ECF 105) ("Def.'s Reply"). I heard oral argument on December 14, 2021. Tr. of Oral Arg. (ECF 110) ("Tr.").

The Agent Orange Act recognizes certain medical conditions as "incurred in or aggravated by" service in Vietnam when they appear in Vietnam veterans. 38 U.S.C. § 1116(a)(1). It also authorizes the Secretary of Veterans Affairs to determine that other diseases "warrant[] a presumption of service-connection by reason of having positive association with exposure to an herbicide agent," *e.g.*, Agent Orange. 38 U.S.C. § 1116(a)(1)(B); *see* 38 U.S.C. § 1116(a)(3) (defining "herbicide agent" as "a chemical in an herbicide used in support of the United States and allied military operations in the Republic of Vietnam" between specified dates).[2]

The Secretary is required to determine service-connection "[w]henever the Secretary determines, on the basis of sound medical and scientific evidence, that a positive association exists between (A) the exposure of humans to an herbicide agent, and (B) the occurrence of a disease in humans[.]" 38 U.S.C. § 1116(b)(1). And the Secretary is required to find that such an association exists when "the credible evidence for the association is equal to or outweighs the credible evidence against the association." 38 U.S.C. § 1116(b)(3). The Secretary has since made the determinations contemplated by the Agent Orange Act for a wide range of diseases. *See* 38 C.F.R. § 3.309(e).

The government handles claims for benefits under the Agent Orange Act pursuant to a consent decree entered by the Northern District of California. In *Nehmer v. United States Veterans' Administration*,[3] that court certified a class comprising:

> all current or former service members, or their next of kin (a) who are eligible to apply to, who will become eligible to apply to, or who have an existing claim pending before the Veteran's Administration for service-connected disabilities or deaths arising from exposure during active-duty service to herbicides containing dioxin or (b) who have had a claim denied by the VA for service-connected disabilities or deaths arising from exposure during active-duty service to herbicides containing dioxin[.]

118 F.R.D. 113, 116 (N.D. Cal. 1987). After the Agent Orange Act took effect, the government and the *Nehmer* class agreed to a "Final Stipulation and Order." Compl.

---

[2] A Vietnam veteran is presumed to have been exposed to herbicide agents "unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during [his] service." 38 U.S.C. § 1116(f).

[3] The Veterans' Administration was later redesignated as the U.S. Department of Veterans Affairs. *See* Department of Veterans Affairs Act, Pub. L. No. 100-527, 102 Stat. 2635 (codified in relevant part at 38 U.S.C. § 301).

¶ 39; Final Stipulation and Order, *Nehmer v. United States Dep't of Veterans Affairs*, No. 86-cv-06160 (N.D. Cal. May 20, 1991) (ECF 141).

The *Nehmer* Final Stipulation and Order provides, in part, that once the VA promulgates a regulation that designates a particular disease as service-connected, the VA must take the following four steps: (1) identify all veterans and survivors who had previously filed a claim based on the newly recognized disease; (2) readjudicate those claims under the newly promulgated regulation; (3) notify the claimants of the planned readjudication; and (4) where the VA awards disability compensation for the newly recognized disease as a result of the readjudication, pay each veteran's VA disability compensation, retroactive to "the date on which the claim asserting the basis upon which the claim is granted was filed, or the date the claimant became disabled or death occurred, whichever is later." Final Stipulation and Order, *Nehmer*, No. 86-cv-06160, at 3–5. The parties call this benefit reconsideration process "*Nehmer* readjudication."

This case concerns not VA benefits, but related benefits paid by DoD — specifically, military retired pay. When a *Nehmer* readjudication establishes that a veteran with more than 20 years of service was at least 50 percent disabled by a service-connected injury, the veteran also becomes eligible for military retired pay. *See* 10 U.S.C. § 1414 (authorizing retired pay in addition to VA benefits). That is referred to as "concurrent retirement and disability pay."

If the veteran has died, his nearest survivor is eligible for whatever pay was due to him at his death. A statutory hierarchy determines which survivor should receive benefits. 10 U.S.C. § 2771(a). Payments of military retired pay are retroactive, hence the parties' references to "retroactive military retired pay," or RMRP. *See* DoD Instruction 7000.14-R, Fin. Mgmt. Reg., vol. 7B § 6403 (Dep't of Def. Oct. 2020) (referring to "retroactive [concurrent retirement and disability payment], owed a deceased member as arrears of pay"); *see also* DoD 7000.14-R, Fin. Mgmt. Reg., vol. 7B § 300201 (Dep't of Def. June 2020) (defining "arrears of pay" as "the retired member's final month of prorated retired pay and all unencumbered amounts due the deceased retired member"). Because payment of RMRP after a service member's death is triggered by a 50-percent disability threshold and covers an ascertainable period during the member's life, it is paid to the designated survivor in a one-time lump sum. 10 U.S.C. § 2771(a); *see also* Tr. at 15–17, 50.

Pursuant to its authority to "settle … claims involving uniformed service members' … survivor benefits[,]" 31 U.S.C. § 3702(a)(1)(A); 10 U.S.C. § 2771(a), (c), DoD has promulgated regulations governing applications for RMRP. *See* 32 C.F.R. Pt. 282. The application process is administered by the Defense Finance and

Accounting Service ("DFAS"). Among other requirements, a survivor must establish his entitlement to payment by submitting a Standard Form 1174 ("SF 1174"). DoD Instruction 7000.14-R, Fin. Mgmt. Reg., vol. 7B §§ 300204, 300205 (Dep't of Def. June 2020); DoD Instruction 7000.14-R, Fin. Mgmt. Reg., vol. 7B § 6403 (Dep't of Def. Oct. 2020).

## II. __Plaintiffs' Claims__

In 2010, the VA added several additional diseases (ischemic heart disease, Parkinson's disease, and forms of leukemia) to its list of conditions presumptively connected to Agent Orange exposure. Diseases Associated With Exposure to Certain Herbicide Agents (Hairy Cell Leukemia and Other Chronic B-Cell Leukemias, Parkinson's Disease and Ischemic Heart Disease), 75 Fed. Reg. 53202 (Aug. 31, 2010); 38 C.F.R. § 3.309(e). The VA performed *Nehmer* readjudications, some of which left *Nehmer* class members (veterans or their surviving statutory beneficiaries) entitled to payment of RMRP. Some class members did not receive payment, however, which led to two lawsuits — one in this Court and one in the Northern District of California — which are now consolidated here. Plaintiffs proposed a class action in their complaints, but have never moved for class certification.

After the cases were filed, Plaintiffs and the government engaged in continuing efforts to pay outstanding RMRP entitlements. The named Plaintiffs who submitted an SF 1174 were paid. Meanwhile DFAS and the VA continued to work together (although Plaintiffs dispute the adequacy of the effort) to locate and pay thousands more claims for RMRP. Today, according to the government, the only outstanding rights to RMRP — totaling about $2.6 million — arise from a few hundred deceased veterans whose beneficiaries have not submitted an SF 1174. Dunnigan Decl. ¶ 12 (ECF 98-1).

The current named Plaintiffs are thus individuals who have received their full share of RMRP, Compl. ¶¶ 69–70, 76–77, 84–85, 92–93, 99, 101; Dunnigan Decl. ¶¶ 14–18; Pls.' Opp. at 12 n.10, or who have not submitted an SF 1174 to DFAS, Compl. ¶¶ 108, 116; Dunnigan Decl. ¶¶ 19–20. The members of the proposed class (which, again, Plaintiffs have not moved to certify) are survivors of Vietnam veterans who may be entitled to RMRP depending on where they fall in the 10 U.S.C. § 2771(a) hierarchy, but who have not submitted an SF 1174. Compl. ¶ 118; Dunnigan Decl. ¶ 12.

The government argued both in this Court and the Northern District that the claims remaining in the case should be dismissed for lack of jurisdiction. Both courts rejected that argument. *Haddock v. United States*, 135 Fed. Cl. 82 (2017); *Davis v. United States*, No. 16-cv-06258, 2017 WL 1862506 (N.D. Cal. May 9, 2017). *Davis* was

transferred to this Court, *see* Stipulation and Order to Transfer Action to Court of Federal Claims, *Davis v. United States*, No. 16-cv-06258 (N.D. Cal. May 29, 2018) (ECF 96), and the two cases were consolidated, *see* Order, *Haddock v. United States*, No. 16-cv-01423 (Fed. Cl. July 17, 2018) (ECF 54). Plaintiff ultimately filed a Fourth Amended Complaint, and the present motion to dismiss followed.

Defendant argues that Plaintiffs' claims are moot (as to named Plaintiffs who have received RMRP) and unripe or unexhausted (as to named Plaintiffs who have not submitted an SF 1174). Plaintiffs, among other arguments, respond that if I grant any part of Defendant's motion, I should grant leave for them to amend their Complaint to include new named plaintiffs. Pls.' Opp. at 32.

## DISCUSSION

### I. Standards of Review

Defendant has moved to dismiss for lack of jurisdiction under RCFC 12(b)(1). This Court, although an Article I body, borrows Article III jurisdictional requirements. *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003); *see also Brookfield Relocation, Inc. v. United States*, 113 Fed. Cl. 74, 77 (2013). The theories Defendant raises — ripeness, mandatory exhaustion, and mootness — are all questions of jurisdiction in this Court. *See Freeman v. United States*, 875 F.3d 623, 627, 632 (Fed. Cir. 2017) (ripeness); *St. Vincent's Med. Ctr. v. United States*, 32 F.3d 548, 552 (Fed. Cir. 1994) (exhaustion); *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (mootness); *Sigmatech, Inc. v. United States*, 122 Fed. Cl. 674, 675 (2015) (same).[4]

Unlike in motions to dismiss under RCFC 12(b)(6), a party may challenge jurisdiction as a factual matter. *See, e.g.*, *Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014). Where such a challenge occurs, the allegations in the complaint do not control and only uncontroverted factual allegations are accepted as true. *Id.* This Court may engage in fact-finding "when considering a motion to dismiss where the jurisdictional facts in the complaint … are challenged." *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999); *see Freeman*, 875 F.3d at 627.

### II. Named Plaintiffs Who Have Not Filed Claims

As mentioned, two named Plaintiffs — Mr. Ladigo and Mr. Newcom — did not file an SF 1174 with DFAS. Defendant argues that those Plaintiffs' claims should be

---

[4] Some cases have characterized ripeness, mootness, and the related doctrine of standing as going not to jurisdiction, but to a distinct doctrine of justiciability. *See, e.g.*, *Fisher v. United States*, 402 F.3d 1167, 1176 (Fed. Cir. 2005); *see also Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993) ("Justiciability is distinct from jurisdiction[.]"). The precise characterization does not appear especially important to this case.

dismissed as unripe, Def.'s Mot. at 10–13; Def.'s Reply at 10–12; Tr. at 7–8, and for failure to exhaust administrative remedies, Def.'s Mot. at 14–20; Def.'s Reply at 13–19; Tr. at 9–13. I agree.

### A. Claims are unripe

"Determining whether a dispute is ripe for review requires evaluation of: (1) the 'fitness' of the disputed issues for judicial resolution; and (2) 'the hardship to the parties of withholding court consideration.'" *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1348 (Fed. Cir. 2015) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). Both criteria show that Mr. Ladigo's and Mr. Newcom's claims are unripe.

As to the first factor, "[w]hen a party challenges government action, [fitness for judicial resolution] becomes a question of whether the challenged conduct constitutes a final agency action." *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1384 (Fed. Cir. 2012). The fact that the government has not paid Mr. Ladigo and Mr. Newcom counts as agency action under the Administrative Procedure Act ("APA"). *Sackett v. EPA*, 566 U.S. 120, 126 (2012) (observing that "the APA defines [agency action] as including even a 'failure to act'") (quoting 5 U.S.C. §§ 551(13), 701(b)(2)). "But is it *final?*" *Id.*

To decide whether an agency action is final, there are two elements to consider: "First, the action must mark the 'consummation' of the agency's decisionmaking process — it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear,* 520 U.S. 154, 177–78 (1997) (citations omitted). In this case, the government has never decided one way or another whether Mr. Ladigo and Mr. Newcom are entitled to payment of RMRP as survivors of Vietnam veterans. No "decisionmaking process" has been "consummat[ed]" by a "determin[ation]" of their "right[]" to RMRP, *id.*, because DFAS has never received the form triggering the process. That means the relevant action is not final, and so claims challenging that action cannot be ripe. *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732–33 (1998) (observing that "the ripeness requirement is designed 'to prevent the courts … from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties'") (quoting *Abbott Labs.*, 387 U.S. at 148–149).

At a higher level of abstraction, there is a different agency action that *might* be final: namely, the government's position that individuals like named Plaintiffs must submit an SF 1174 to obtain compensation. That position leaves Plaintiffs

"obligat[ed]" to perform certain acts to obtain RMRP, *id.* at 733, and there is no indication that the government's position is "subject to further Agency review," *Sackett*, 566 U.S. at 127. But that agency action is not subject to this Court's review because it does not involve payment of money. A lawsuit challenging it would be an APA claim to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), over which this Court lacks jurisdiction. *Smalls v. United States*, 87 Fed. Cl. 300, 308 (2009) (collecting cases). Although this Court sometimes applies APA or analogous standards to bid protests, *see* 28 U.S.C. § 1491(b)(4), and when reviewing decisions denying a claim for money, *see* 42 U.S.C. § 300aa-12(e)(2)(B); *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983), Plaintiffs cite no authority allowing this Court to review an agency action like this one, antecedent to any denial of money.

As to the second ripeness factor, it is hard to conceive any "hardship" in withholding this Court's consideration. The parties do not disagree that Mr. Ladigo and Mr. Newcom will both receive a decision on their entitlement to RMRP if they each submit an SF 1174 to DFAS. Plaintiffs do not even argue that having to submit an SF 1174 would be a hardship. *See* Tr. at 41. The lack of hardship from requiring Mr. Ladigo and Mr. Newcom to follow the agency process before obtaining review in this Court is an independent reason for considering their claims unripe.

## B. Claims are not exhausted

"The doctrine of exhaustion of administrative remedies provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed. Cir. 1998) (quoting *McKart v. United States*, 395 U.S. 185, 193, (1969) (itself quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938))) (alteration and quotes omitted). Claims brought to court before mandatory administrative remedies are exhausted should be dismissed for lack of jurisdiction. *See id.* at 597 (affirming dismissal for lack of jurisdiction). Defendant argues that the statutes and regulations governing claims for RMRP create such a mandatory administrative remedy, and I agree.

The statutes and regulations here — unlike some that expressly require claimants to pursue agency processes before going to court, *see, e.g.*, *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1255 (Fed. Cir. 2015) (quoting 13 C.F.R. § 121.1102) — do not mention judicial remedies or review. The question, then, is whether a mandatory exhaustion requirement can be *implied*.

The Supreme Court has stated that administrative remedies are presumed to be mandatory: "Where relief is available from an administrative agency, the plaintiff

is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993). The Federal Circuit has applied that rule by looking to "the twin purposes" of the exhaustion doctrine, namely, "protecting administrative agency authority and promoting judicial efficiency." *Sandvik Steel*, 164 F.3d at 600 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)); *see also Miriyeva v. United States Citizenship & Immigr. Servs.*, 9 F.4th 935, 939 (D.C. Cir. 2021) ("[C]ourts determine that Congress intended that a litigant proceed exclusively through a statutory scheme of administrative and judicial review when (i) such intent is fairly discernible in the statutory scheme, and (ii) the litigant's claims are of the type Congress intended to be reviewed within the statutory structure.") (quoting *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (itself quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994))).

With that in mind, the relevant provisions are as follows. The Secretary of Defense has statutory authority to "settle … claims involving uniformed service members' … survivor benefits[.]" 31 U.S.C. § 3702(a)(1)(A); 10 U.S.C. § 2771(a), (c). DoD has accordingly promulgated regulations governing how survivors of deceased veterans can claim benefits, including RMRP, that had been due to the veteran. 32 C.F.R. §§ 282.1, 282.4(b). Those regulations were issued after notice and comment, *see* Procedures for Settling Personnel and General Claims and Processing Advance Decision Requests, 69 Fed. Reg. 38,843, 38,845 (June 29, 2004), and Plaintiffs do not argue that they are invalid for any reason.[5]

The regulations cover claims for benefits under 10 U.S.C. § 2771. 32 C.F.R. § Pt. 282, App. C, (a). They authorize payment of survivor benefits *only* upon a "final action" reached in accordance with the applicable procedures. 32 C.F.R. §§ 282.5(c)(3), (d)(3), 282.4(a) ("Claims shall be settled … in accordance with all pertinent statutes and regulations[.]"); 32 C.F.R. Pt. 282, App. A, (d)(1) ("The appropriate official … shall pay a claim in accordance with the final action concerning the claim.").[6] The

---

[5] Because I conclude that the regulations require exhaustion, I do not reach Defendant's argument based on the statutes alone. Def.'s Mot. at 15–17. "The fact that the administrative remedy was provided by a regulation rather than by a statute does not make the exhaustion doctrine inapplicable or inappropriate." *Sandvik Steel*, 164 F.3d at 600. Relatedly, I pass over the cases Plaintiffs cite for the proposition that 31 U.S.C. § 3702 does not create a mandatory exhaustion requirement. Pls.' Opp. at 25–26 (quoting *Iran Nat'l Airlines Corp. v. United States*, 360 F.2d 640, 642 (Ct. Cl. 1966); *Ater v. United States*, 6 Cl. Ct. 344, 349 (1984), *aff'd*, 770 F.2d 182 (Fed. Cir. 1985); *Inter-Coastal Xpress, Inc. v. United States*, 49 Fed. Cl. 531, 542 (2001), *aff'd*, 296 F.3d 1357 (Fed. Cir. 2002); *Bailey v. United States*, 52 Fed. Cl. 105, 113 n.7 (2002)). Those cases predate the relevant DoD regulations, so they shed no light on whether an exhaustion requirement flows from the administrative system as a whole.

[6] *See also* 32 C.F.R. § 282.3(e) (defining "final action" as, *inter alia*, "[a] finding by the appropriate official under this part concerning a claim from which there is no right to appeal or request

procedures in the regulations are ones that "a claimant *must* follow to submit a claim[.]" 32 C.F.R. Pt. 282, App. A, (a) (emphasis added).

The regulations then describe in detail the requirements that claims "must" satisfy, including that a claimant "must prove, by clear and convincing evidence, on the written record that the United States is liable to the claimant for the amount claimed," 32 C.F.R. § Pt. 282, App. C, (g), and "must submit a claim in the format prescribed by the Component concerned," 32 C.F.R. § Pt. 282, App. C, (c). Following that requirement means submitting an SF 1174. DoD Instruction 7000.14-R, Fin. Mgmt. Reg., vol. 7B § 300205(A)(1) (Dep't of Def. June 2020) (providing that "[t]o effect settlement" of arrears of pay due to a deceased service member, "the following documents must be a matter of record," including a "[c]ompleted SF 1174, Claim for Unpaid Compensation of Deceased Member of the Uniformed Services, from the beneficiary"). The regulations also detail the process for administrative appeal within DoD. 32 C.F.R. § Pt. 282, App. E.

In short, Congress has authorized DoD to settle the kinds of claims at issue here, and the agency — exercising that delegated authority — determined that no payments will be made unless claimants and DoD components follow particular procedures to a final decision. That is the very type of administrative claims-management regime that courts have treated as creating an implied exhaustion requirement. Treating the system as mandatory "allow[s] [DoD] to perform functions within its special competence — to make a factual record, to apply its expertise, and to correct its own errors[.]" *Sandvik Steel*, 164 F.3d at 600 (quoting *Parisi v. Davidson*, 405 U.S. 34, 37 (1972)). It also allows DoD to reach decisions in the first instance that might "moot judicial controversies," *id.* (quoting *Parisi*, 405 U.S. at 37) — an especially important consideration here, where DoD handles tens of thousands of requests that never reach a court, *see* Dunnigan Decl. ¶¶ 2, 10–12, and where the putative class contains hundreds of individuals whose claims could be handled equally well before the agency if they would only submit a form. Because the regulations are consistent with the presumption that the administrative process for RMRP claims is mandatory, claims by Plaintiffs who have not filed an SF 1174 are unexhausted and must be dismissed for lack of jurisdiction. *See Reiter*, 507 U.S. at 269; *Sandvik Steel*, 164 F.3d at 597.

---

reconsideration"); 32 C.F.R. § 282.3(b) (defining "claim" as "[a] demand for money or property under … 10 U.S.C. 2771").

### III.   <u>Named Plaintiffs Who Have Been Paid</u>

The other five named Plaintiffs have actually received the RMRP to which they are entitled. Defendant accordingly argues that their claims are moot. Def.'s Mot. at 7–9; Def.'s Reply at 1–8; Tr. at 6–7. Once, more, I must agree.

#### A.  Claims are moot

A case becomes moot when the plaintiffs lose standing, that is, when the plaintiffs have no further "legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.* 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)); *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L. J. 1363, 1384 (1973)). Claims for money, for example, generally become moot when the plaintiff receives the compensation he seeks. *California v. San Pablo & Tulare R.R. Co.*, 149 U.S. 308 (1893); *Little v. Bowers*, 134 U.S. 547 (1890); *San Mateo Cnty. v. S. Pac. R.R. Co.*, 116 U.S. 138 (1885). Here, there is no dispute that the remaining five named Plaintiffs — Doris Davis, Patricia Springer, Rose Grant, Stephen Meinz, and Marion Y. Grant — have received all the compensation to which they will ever be entitled as survivors of the deceased veterans in question. Ordinarily that would be enough to dismiss those Plaintiffs' claims.

Plaintiffs argue that although the paid Plaintiffs' claims are personally moot, the case can proceed under exceptions to the mootness doctrine.[7] But those exceptions do not apply here.

##### 1.  *Inherently transitory class claims*

One exception to mootness applies to claims that are "inherently transitory." That exception has been defined in the context of class actions under Federal Rule of Civil Procedure 23. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013).[8]

A certified class under Federal Rule of Civil Procedure 23 is a legal entity with claims and standing of its own, independent of the class representative. *See id.* (quoting *Sosna v. Iowa*, 419 U.S. 393, 399–402 (1975)). To reach certification, the

---

[7] Plaintiffs argue that their claims are not moot because they are "inherently transitory," an exception they claim has two elements: "(1) [T]he action must in its duration be too short to be fully litigated prior to its cessation or expiration; and (2) there must be a reasonable likelihood that the party will again suffer the injury that gave rise to the suit." Pls.' Opp. at 16 (quoting *Haddock*, 135 Fed. Cl. at 90) (quotes and alterations omitted). As discussed below, that conflates two distinct mootness exceptions. Giving Plaintiffs the benefit of the doubt, I will assume that they mean to raise both of those exceptions.

[8] "The precedent interpreting the Federal Rules of Civil Procedure applies with equal force to the comparable Rules of the Court of Federal Claims." *Kraft, Inc. v. United States*, 85 F.3d 602, 605 n.6 (Fed. Cir. 1996). Federal Rule of Civil Procedure 23 is comparable to RCFC 23 in the respects discussed here.

named plaintiff in a prospective class action generally must have a live claim both when the complaint is filed and when the class action is certified by the trial court. *Sosna*, 419 U.S. at 402. But "where a named plaintiff's claim is 'inherently transitory,' and becomes moot prior to certification, a motion for certification may 'relate back' to the filing of the complaint." *Genesis Healthcare*, 569 U.S. at 71 n.2 (quoting *Cnty. of Riverside v. McLaughlin,* 500 U.S. 44, 51–52 (1991)); *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1539 (2018) (citing *Sosna*, 419 U.S. at 402 n.11, and *Gerstein v. Pugh,* 420 U.S. 103, 110–111 n.11 (1975)).[9] The point of the exception is to enable judicial review in situations where otherwise "the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *McLaughlin*, 500 U.S. at 52 (quoting *Geraghty,* 445 U.S. at 399); *see also Genesis Healthcare*, 569 U.S. at 76.

The Federal Circuit has not yet had occasion to address the "inherently transitory" exception in a case originating in this Court. *See Lohmann v. United States*, 154 Fed. Cl. 355, 364 (2021). It is possible that the exception does not apply at all in this Court because of the differences between class actions under the federal Rules and the RCFC. *Id.* at 367. Assuming the RCFC allow it, however, the D.C. Circuit has helpfully summarized the exception as involving two questions. First, will "the individual claim ... end before the district court has a reasonable amount of time to decide class certification[?]" *J.D. v. Azar*, 925 F.3d 1291, 1311 (D.C. Cir. 2019). Second, will "some class members ... retain a live claim at every stage of litigation [?]" *Id.* "An affirmative answer to both questions ordinarily will suffice to trigger relation back." *Id.*; *see also Genesis Healthcare*, 569 U.S. at 75–76. Here, *neither* question can be answered in the affirmative.

As to the first, *Genesis Healthcare* makes clear that claims cannot be "inherently transitory" for the reasons Plaintiffs claim. The plaintiffs in *Genesis Healthcare*, much like in this case, argued that their claims were "inherently transitory" because the defendant could "strategically use" offers of judgment under Federal Rule of Civil Procedure 68 to "'pick off' named plaintiffs[.]" 569 U.S. at 76.[10] The Supreme Court held that "cases invoking the 'inherently transitory' relation-back rationale do not apply" because "this doctrine has invariably focused on the fleeting

---

[9] A second class-action–related mootness exception — inapplicable here — comes into play "where a certification motion is denied and a named plaintiff's claim subsequently becomes moot," in which case "an appellate reversal of the certification decision may relate back to the time of the denial." *Genesis Healthcare*, 569 U.S. at 71 n.2 (citing *Geraghty,* 445 U.S. at 404).

[10] Some cases suggest that when a plaintiff does not accept payment, their claims might still be live. *See* Pls.' Opp. at 18–19 (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), and *Chen v. Allstate Ins. Co.*, 819 F.3d 1136 (9th Cir. 2016)). But Plaintiffs in this case made a different choice, so there is no reason to pursue the hypothetical.

nature of the challenged conduct giving rise to the claim, not on the defendant's litigation strategy." *Id.* at 76–77.[11] It follows that even if the United States *did* strategically "pick off" claims in this case, it would not make the claims inherently transitory for purposes of a mootness exception.[12] Although *Genesis Healthcare* involved a collective action under the Fair Labor Standards Act, not a true class action, its reasoning applies equally here.

That makes sense. If no case or controversy exists, there is no jurisdiction; the *reasons* for want of a case or controversy do not matter. When someone sues the United States in this Court, the fundamental jurisdictional question — as in an Article III court — is whether a case or controversy exists. And when jurisdiction is lacking, the only proper course is to recognize the fact and dismiss the action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). That is what keeps a court from transforming itself into an inquisitorial body, or a free-roving commission for righting wrongs. There is no room for a court to refuse to dismiss a moot case merely because it disapproves of the reasons why its jurisdiction has ended.

Another reason Plaintiffs' claims cannot be inherently transitory is that they are claims for money. The point of the "inherently transitory" exception is to capture and resolve class claims that would "otherwise evade review." *Genesis Healthcare*, 569 U.S. at 76. But as *Genesis Healthcare* explains, "[u]nlike claims for injunctive relief challenging ongoing conduct, a claim for damages *cannot* evade review; it remains live until it is settled, judicially resolved, or barred by a statute of limitations." *Id.* at 77 (emphasis added). The claims of the paid named Plaintiffs in this case, in other words, have not "evaded review"; they have been *resolved*, never to reappear again, making those Plaintiffs whole. The claims of absent class members have not evaded review either: Although payment of RMRP to named Plaintiffs "may have the collateral effect of foreclosing unjoined claimants from having their rights vindicated in [*this*] suit, such putative plaintiffs remain free to vindicate their rights in their own suits. They are no less able to have their claims settled or adjudicated following [Plaintiffs'] suit than if [this] suit had never been filed at all." *Id.*

Plaintiffs respond that claims going to the government's failure to locate and contact individuals entitled to RMRP might evade review. *See* Pls.' Opp. at 31; Tr. at 45. Perhaps so, but that is not a claim for money that can be heard in this Court. It

---

[11] The idea that a strategy of "picking off" named plaintiffs in a class action triggers a mootness exception seems to have originated with language in *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980), that *Genesis Healthcare* later characterized as dicta. 569 U.S. at 77–78.

[12] In *Lohmann*, this Court considered whether the government had tried to strategically pick off named plaintiffs, but decided that the government had not done so. 154 Fed. Cl. at 364–67.

may be a claim under the APA for "agency action unlawfully withheld or unreasonably delayed," *see* 5 U.S.C. § 706(1), but that is for another court to decide.

Still another reason Plaintiffs' claims do not meet the first element of the "inherently transitory" mootness exception is that Plaintiffs have never moved for class certification. The purpose of the exception, again, is to enable judicial review of class actions where individual claims are so evanescent that they expire before a class can be certified. *McLaughlin*, 500 U.S. at 52. But the Supreme Court's cases have never expressly extended the exception beyond facts where the motion for certification came *before* the named plaintiff's claim became moot.[13] Lower courts "have repeatedly refused to apply [the 'inherently transitory' exception] when the named plaintiff's individual claims became moot before application for class certification." *See Lusardi v. Xerox Corp.*, 975 F.2d 964, 977 (3d Cir. 1992) (emphasis omitted).

That follows from the class-certification procedure. When a certification motion has been filed before the named plaintiff's claims are moot, there is a legal and factual record, created by a person with a stake in the matter, showing the existence at the time of a group entitled to the rights that come with class certification. Even if the court does not act on the motion immediately, the creation of such a record implies that absent individuals are entitled to class treatment when the motion is filed. The "inherently transitory" exception allows the class the benefit of that showing rather than penalizing them for the court's own (inevitable) delay.

But that logic does not extend to circumstances where a motion has not yet been filed. Otherwise, the mere *possibility* of a motion for class certification would have the same jurisdictional consequences as an actual class action under the federal Rules or the RCFC. That would contradict the Supreme Court's direction not to expand the "inherently transitory" exception by "recogniz[ing] a common-law kind of class action or creat[ing] *de facto* class actions at will." *Sanchez-Gomez*, 138 S. Ct. at 1539 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 901 (2008)) (alteration and quotes omitted). It would also keep cases alive after the named plaintiffs lose their personal stake — leaving federal courts to preside over litigation driven only by lawyers without existing clients, *contra, e.g.*, *Kowalski v. Tesmer*, 543 U.S. 125, 131 (2004);

---

[13] Where the relevant Supreme Court decisions specify the sequence of events, it appears that mootness developed after motions for certification were filed. *Sosna*, 419 U.S. at 397–98 (noting that a stipulation of class certification was entered in a pre-trial order); *Sosna v. Iowa*, 360 F. Supp. 1182, 1182–83 (N.D. Iowa 1973) (indicating that plaintiff's claim became moot after trial); *Geraghty*, 445 U.S. at 393–94 (noting that respondent's release from prison, the purported cause of mootness, occurred after denial of class certification); *see also Nielsen v. Preap*, 139 S. Ct. 954, 962–63 (2019) (finding that in both lower court cases "there was at least one named plaintiff with a live claim when the class was certified").

*Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 430 (1976), or by a plaintiff's abstract concern about third-party injuries that no longer "affect the plaintiff in a personal and individual way," *contra, e.g., Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992).

The second element in the "inherently transitory" exception is not met either. Most obviously, there are no "class members … retain[ing] a live claim" because there is no class, only a group of absent individuals that Plaintiffs never moved to have certified. *J.D.*, 925 F.3d at 1311. To treat them as a class without certification would be to create a "*de facto*," "common-law kind of class action," just as the Supreme Court has forbidden. *Sanchez-Gomez*, 138 S. Ct. at 1539. Even if I could overlook that problem, Plaintiffs do not dispute that the absent individuals in the supposed class have not submitted an SF 1174. Dunnigan Decl. ¶ 12 (representing that the only unpaid accounts of deceased veterans are those where no survivor has "submitted a claim to DFAS that would permit payment"). But as explained above, failure to file an SF 1174 means that their claims are unripe and their mandatory administrative remedies have not been exhausted. That leaves no reason in the record to think that *any* absent member of the supposed class has a live claim. Whatever the outer limits of the inherently transitory mootness exception might be, it cannot reach the unripe, unexhausted claims of individuals in an uncertified non-class.

### 2. Capable of repetition

Another mootness exception covers situations where the injury is "capable of repetition[] yet evading review." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998); *see also* Wright & Miller, Federal Practice & Procedure, § 8347 (3d ed. 2021). "That exception [to mootness] applies 'only in exceptional situations,' where (1) 'the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration,' and (2) 'there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (quoting *Spencer*, 523 U.S. at 17); *Torrington Co. v. United States*, 44 F.3d 1572, 1577 (Fed. Cir. 1995). Once more, neither element is met.

The first can be disposed of quickly. For the same reasons mentioned above as to the "inherently transitory" mootness exception, what matters should be the nature of the injury, not the defendant's litigation strategy. Also for the same reasons, claims for money damages do not "evade review," even when quickly resolved by the parties. *Genesis Healthcare*, 569 U.S. at 77.[14]

---

[14] Only one Supreme Court case applying the "capable of repetition" exception originated in this Court, but it was a bid protest, not a claim for money. *Kingdomware Techs.*, 579 U.S. at 169–70.

As for the second factor, Plaintiffs concede that they will not be subjected to the same conduct. Tr. at 49–50. They have received the RMRP to which they are entitled as beneficiaries of the deceased veterans; they cannot receive more. Plaintiffs therefore provide no evidence at all — let alone show a "reasonable expectation" — that they will personally be deprived of any RMRP again. *Kingdomware Techs.*, 579 U.S. at 170.

**B. Law of the case does not apply**

Although I conclude that the paid Plaintiffs' claims are moot, two judges assigned to this case before me have held the opposite. The government made similar mootness arguments in this Court and the Northern District of California, both of which decided that Plaintiffs' claims satisfied mootness exceptions. *Haddock*, 135 Fed. Cl. 82; *Davis*, 2017 WL 1862506. Plaintiffs therefore argue that whatever my own judgment might be, I should abide by past decisions under the "law of the case" doctrine. Pls.' Opp. at 13–16.

"Law of the case is a judicially created doctrine, the purpose of which is to prevent relitigation of issues that have been decided." *Suel v. Sec'y of Health & Hum. Servs.*, 192 F.3d 981, 984 (Fed. Cir. 1999). Under that doctrine, "a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation." *Id.* at 985. It is not certain that law of the case applies with full force to subject-matter jurisdiction. *See, e.g., Green v. Dep't of Com.*, 618 F.2d 836, 839 n.9 (D.C. Cir. 1980) (explaining that "the doctrine of 'law of the case' does not apply to the fundamental question of subject matter jurisdiction"); RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").[15] But even assuming that it does apply, law of the case gives way in "extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson*, 486 U.S. at 817 (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)). With all respect to the jurists who addressed mootness in this case before, that is precisely the problem here.

Start with the reasoning of the Northern District of California. The district court held — based on Ninth Circuit authority — that "Plaintiffs' claims in this case

---

[15] Separate considerations apply to reconsideration of jurisdictional findings that transfer a case to this Court. In that circumstance, where second-guessing the transfer order risks starting a "game of jurisdictional ping pong," *Doko Farms v. United States*, 861 F.2d 255, 257 (Fed. Cir. 1988); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988), the Court should defer to the jurisdictional conclusions of the transferor court: "Under law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end." *Doko Farms*, 861 F.2d at 256 (quoting *Christianson*, 486 U.S. at 819) (emphasis omitted). Here, Defendant does not challenge the Northern District of California's decision to transfer *Davis* to this Court.

are not inherently transitory based on time sensitivity, but … are nonetheless 'transitory by virtue of the defendant's litigation strategy.'" *Davis*, 2017 WL 1862506, at *2 (quoting *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011)); *see also id.* ("[T]o the extent that defendants may avoid a class action by 'picking off' the named plaintiffs, the class claims are 'inherently transitory' and evade review, making an exception to the mootness rule appropriate.'") (quoting *Chen*, 819 F.3d at 1143). As discussed above, the Supreme Court explained in *Genesis Healthcare* — which the *Davis* court never cited — that a defendant's litigation strategy does not bear on the "inherently transitory" exception. *Genesis Healthcare*, 569 U.S. at 76–77. All that matters is a claim's *inherent* transience, and the Northern District decided Plaintiffs did not meet that standard. *Davis*, 2017 WL 1862506, at *2.

Nor did the Northern District recognize that, under *Genesis Healthcare*, claims for money cannot evade review. On that aspect of the "inherently transitory" mootness exception, there is no decision from the Northern District, so law of the case does not apply. *McGuire v. United States*, 97 Fed. Cl. 425, 435 (2011) ("Only issues that were 'actually decided, either explicitly or by necessary implication,' are considered the law of the case.") (quoting *Toro Co. v. White Consol. Indus., Inc.,* 383 F.3d 1326, 1335 (Fed. Cir. 2004)).

Moreover, the Northern District bypassed the other element of the "inherently transitory" exception, *i.e.*, whether there will be other "class members [with] a live claim at every stage of litigation." *J.D.*, 925 F.3d at 1311; *see also Genesis Healthcare*, 569 U.S. at 76 (explaining that it must be "'certain that other persons similarly situated' will continue to be subject to the challenged conduct") (quoting *McLaughlin*, 500 U.S. at 52). The district court never considered whether the absent individuals have ripe and administratively exhausted claims over which a court might have jurisdiction. Nor did it consider whether the absent individuals' claims were for money, as opposed to APA claims that this Court must dismiss, an issue best addressed in the first instance in this Court. Law of the case does not apply to those issues either. *See Suel*, 192 F.3d at 984 (stating that law of the case "prevent[s] relitigation of *issues* that have been *decided*") (emphasis added); *McGuire*, 97 Fed. Cl. at 435 (explaining that law of the case only covers issues "actually decided") (quotes omitted); *Agostini v. Felton*, 521 U.S. 203, 236 (1997) (noting that law of the case applies to "*issues decided* in earlier stages of the same litigation") (emphasis added); *Arizona v. California*, 460 U.S. 605, 618 (1983) ("[Law of the case] posits that when a court *decides upon a rule of law*, that decision should continue to govern the *same issues* in subsequent stages in the same case.") (emphasis added), *decision supplemented*, 466 U.S. 144 (1984).

This Court's prior decision about mootness exceptions erred as well.[16] The Court began its analysis by referring to "the 'inherently transitory' exception (more commonly known as the 'capable of repetition, yet evading review' exception)[.]" *Haddock*, 135 Fed. Cl. at 90. As shown above, that mistakenly conflates two different mootness exceptions with different elements. Like the Northern District, this Court found Plaintiffs' claims inherently transitory because of "Defendant's apparent litigation strategy of paying the named parties to render their claims moot," and similarly without acknowledging *Genesis Healthcare*. *Id.* The Court also reasoned that Plaintiffs' "intention to move for class certification … underscores the 'case or controversy' to be resolved," *id.*, notwithstanding that the Supreme Court precedents addressing mootness exceptions have no provision for forthcoming, unfiled certification motions.

In addition to those errors, this Court found the second element of a mootness exception met "because the Plaintiffs have offered evidence to show that there are many other veterans (or their beneficiaries) whose retroactive benefits have yet to be paid." *Id.* at 90–91. That may have adequately stated the facts at the time, but it fails to account for the situation *now*, where the only remaining unpaid claims are unripe and unexhausted.

In short, both decisions Plaintiffs rely on as law of the case are clearly erroneous because they directly contradict direction from the Supreme Court about the mootness exceptions at issue. To the extent the Northern District's reasoning was compelled by Ninth Circuit caselaw, there is no reason for *this* Court — supervised by the Federal Circuit — to follow the district court's error. And at least part of this Court's prior reasoning appears to have been superseded by changed facts.

Failing to dismiss in this circumstance would also be manifestly unjust. This Court is a body of limited jurisdiction, exercising powers specifically granted by Congress. *In re United States*, 877 F.2d 1568, 1571 (Fed. Cir. 1989) ("[A]ll federal courts, except the Supreme Court, are established by Congress and possess only the jurisdiction granted to them by the Congress.") Because it is an Article I court, it is also like an administrative agency in that it "literally has no power to act ... unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986); *In re United States*, 877 F.2d at 1571 ("The powers of an Article I

---

[16] That ruling had two other bases for finding jurisdiction: (1) Mr. Meinz had completed his claim procedure but had not yet been paid, and (2) Ms. Springer had been paid but claimed that she had not received all the RMRP to which she was entitled. *Haddock*, 135 Fed. Cl. at 90. Both of those facts are now changed. Nonetheless, the ruling's conclusions about mootness are part of its holding and therefore entitled to weight as law of the case. *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) ("[W]here a decision rests on two or more grounds, none can be relegated to the category of obiter dictum.").

court are limited by what has been given it by specific act of Congress and by its own rules adopted pursuant to Congressional authority."). It would be manifestly unjust for a creation of Congress to hold the United States to account in litigation beyond the jurisdiction Congress authorized.

It is also manifestly unjust to adjudicate the rights of individuals in Plaintiffs' alleged class without any named Plaintiffs with live claims. Modern American courts depend on the adversarial process to find the truth. *See United States v. Sineneng-Smith,* 140 S. Ct. 1575, 1579 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation."). Without an adversarial process, a court cannot be confident that either the law or the facts will be presented in the best light. That concern is especially serious where a court is asked to bypass jurisdictional limits to protect absent third parties, and even more so in a class action where the third parties could end up personally bound by the result if they choose to join. Suppose a defendant actually had "picked off" the named plaintiffs in a class action: Why should a court expect fairness to class members where the plaintiffs actually in court and in communication with plaintiffs' counsel have been literally bought off by the defendant? At best, in the absence of real adversity between the litigants, perhaps a case will end up being driven by the lawyers' own goals and interests, which might differ from those of absent clients. *Cf.* John C. Coffee, Jr*., Rescuing the Private Attorney General: Why the Model of the Lawyer As Bounty Hunter Is Not Working*, 42 Md. L. Rev. 215, 232–33 (1983); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting that the Federal Rule of Civil Procedure 23(a)(4) adequacy-of-representation "raises concerns about the competency of class counsel and conflicts of interest").

## IV. **Leave to Amend**

Plaintiffs lastly claim that if this Court grants any part of the motion to dismiss, they should be granted leave to amend.

First, they assert that Plaintiffs' counsel is "regularly contacted by individuals who have not been paid benefits owed and are willing to substitute in as additional named plaintiffs if necessary." Pls.' Opp. at 32. But again, the only remaining unpaid members of the putative class have failed to submit an SF 1174. Because those claims are unripe and unexhausted, amending the complaint to include any of them as named plaintiffs would be futile. *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 219 (5th Cir. 2021); *Roman-Martinez v. Runyon*, 100 F.3d 213, 220 (1st Cir. 1996).

Second, Plaintiffs ask to add thousands of new individuals to the putative class, namely, "blue-water" veterans recently brought within the *Nehmer* consent decree.

A word of explanation. Until recently, the presumption of service-connection for diseases linked to Agent Orange only applied to veterans "presen[t] at some point on the landmass or the inland waters of Vietnam[.]" *Haas v. Peake*, 525 F.3d 1168, 1197 (Fed. Cir. 2008). In 2019, the Federal Circuit changed course, extending the presumption to "blue-water" veterans who served on ships in Vietnam's territorial waters, but not on inland waters or ashore. *Procopio v. Wilkie*, 913 F.3d 1371, 1380–81 (Fed. Cir. 2019) (en banc) (overruling *Haas*). The Northern District of California accordingly determined that the *Nehmer* consent decree covers blue-water veterans as well. The district court ordered the VA to identify all readjudication decisions "in which the VA denied compensation on the ground that the veteran was not entitled to the presumption of herbicide exposure because the veteran did not set foot on the landmass of Vietnam or serve in the inland waterways of Vietnam," and to issue new readjudications for those veterans. *Nehmer*, 2020 WL 6508529, at *6 (N.D. Cal. Nov. 5, 2020). The new readjudications are to be completed by November 30, 2022. *See* Stipulation with Proposed Order, *Nehmer*, No. 86-cv-06160 (N.D. Cal. May 12, 2021) (ECF 493).

Plaintiffs do not allege that any current named Plaintiff — or any member of the putative class as described before — is a blue-water veteran or the survivor of one. But "[t]he inclusion of these veterans and their survivors in the class and/or as additional named plaintiffs in this case," Plaintiffs argue, "would avoid unnecessary future litigation, while also significantly expanding the scope of this action." Pls.' Opp. at 32.

The problem is, Plaintiffs have not shown that the blue-water veterans and their survivors have ripe claims. Plaintiffs do not suggest that any blue-water veteran has had a favorable *Nehmer* readjudication but remained unpaid. Nor do they suggest that the survivor of any blue-water veteran has submitted an SF 1174 but remained unpaid. Until one of those events comes to pass, the United States may not be in breach of its obligations to blue-water veterans in the first place. Even indulging the assumption that the United States *will* breach its obligations, there is no telling when that will happen, or if anyone will remain unpaid long enough to want to pursue litigation at all. In the meantime, there is nothing to litigate. It would be not just premature, but preposterous under these circumstances to entirely reorient the case around "contingent future events that may not occur as anticipated, or indeed may not occur at all[.]" *Shinnecock Indian Nation*, 782 F.3d at 1349 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)); *see DM Arbor Ct.*, 988 F.3d at 219 ("[I]t would have been futile for [plaintiff] to amend its complaint to add an additional unripe claim."); *HCIC Enterprises, LLC v. United States*, 149 Fed. Cl. 297, 302 (2020); *CanPro Invs. Ltd. v. United States*, 120 Fed. Cl. 17, 24–25 (2015).

Until things develop, allowing Plaintiffs to amend would amount to little more than keeping a moot case on life support on the chance that other people's claims might accrue. I decline that invitation. Here, as usual, "when [jurisdiction] ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle,* 74 U.S. (7 Wall.) at 514).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. The case is **DISMISSED**.

The Clerk is directed to enter judgment accordingly.


**IT IS SO ORDERED.**

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge
